# United States Court of Appeals

## For the First Circuit

No. 08-2458

JOSE JULIAN CRUZ BERRÍOS,

Plaintiff, Appellant,

v.

CARLOS GONZÁLEZ-ROSARIO, WILLIAM CLASS-QUIRÓS, RAFAEL OLIVER
BAEZ, MIGUEL ORTIZ-MARRERO, ENIL MONTALVO-MORALES, SANTOS
JIMÉNEZ-COLÓN, ERICK GARCÍA-SANTOS, EDDIE M. CRUZ-
SANTIAGO,SERGEANT UZZIEL RUIZ-LEDEÉ, SERGEANT REINALDO
SURÉN,SERGEANT OSVALDO RIVERA-DOMÍNGUEZ, FNU O'FARRILL, JAMIE
LÓPEZ, JORGE SILVESTRINI, JORGE RODRÍGUEZ, MIGUEL PEREIRA and
WILMER SEPÚLVEDA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Howard, Circuit Judges.

Victor J. Quiñones, Edgardo Cartagena, Ramon E. Dapena and
Usera Morell Bauza Dapena & Cartagena, LLP, on brief for appellant.
Irene S. Soroeta-Kodesh, Solicitor General, Leticia Casalduc-
Rabell, Deputy Solicitor General, Zaira Z. Girón-Anadón, Deputy
Solicitor General, and Michelle Camacho-Nieves, Assistant Solicitor
General, Department of Justice, on brief for appellees.

December 16, 2010

**HOWARD**, **Circuit Judge**.  José Julian Cruz-Berríos, an inmate currently serving a sentence under the jurisdiction of the Puerto Rico Department of Corrections, brought a federal civil rights action against various corrections officers whom he alleges exerted excessive force against him.  The district court dismissed the action after determining that it was precluded as res judicata by his previous, unsuccessful state suit based on similar alleged conduct.[1]  Cruz-Berríos v. Gonzalez-Rosario, 577 F. Supp. 2d 561 (D.P.R. 2008).  Cruz-Berríos now appeals.  After review, we affirm in part, reverse in part, and remand the case to the district court for further development of the record and clarification on matters of Puerto Rico law.

I.

In March 2004, Cruz-Berríos filed a lawsuit in the Puerto Rico Court of First Instance under Article 1802 of the P.R. Civil Code, P.R. Laws Ann. tit. 31 § 5141, alleging that officers in the Puerto Rico correctional facility where he was housed had assaulted him in retaliation for implicating them in a drug trafficking investigation.  His complaint referred to two separate incidents of abuse, one on November 9, 2002, and another on February 28, 2004.

---

[1]Puerto Rico is the functional equivalent of a state for all purposes relevant to this case.  Accordingly, we refer here to state actions and state courts, notwithstanding Puerto Rico's unique commonwealth status.  See, e.g., R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 183 n.2 (1st Cir. 2006).

Shortly after initiating that action, Cruz-Berríos also filed a complaint in federal district court under 42 U.S.C. § 1983, making similar allegations. Some, though not all, of the named defendants in the federal complaint were also defendants in the state court case. Cruz-Berríos twice amended the federal complaint, each time adding a new incident that he claimed had occurred after the most recent filing.[2] In the first amended complaint, he added additional corrections officers and administrators as defendants and included a third assault that had allegedly occurred on August 18, 2004, which he claimed was part of the same general pattern of retaliation as the original two incidents. In the second amended complaint, he alleged a fourth such incident, which he claimed occurred on March 2, 2005, and added another prison administrator as a defendant.[3] Of these four alleged incidents, only the claims concerning the last three were permitted to proceed, as the district court determined that the claim arising out of the November 2002 incident was time-barred.[4]

Due to developments in the state court case, however, those three claims did not proceed very far. After a bench trial,

_____

[2]At no point did Cruz-Berríos amend his state complaint.

[3]In order to avoid a sovereign immunity bar, he also specified that any claims for damages were against the defendants in their personal capacities, while any injunctive relief sought was against the defendants in both their personal and official capacities. See Edelman v. Jordan, 415 U.S. 651, 664-65 (1974).

[4]Cruz-Berríos does not challenge this conclusion on appeal.

the Court of First Instance entered judgment against Cruz-Berríos, finding that no excessive use of force had been used on either of the dates discussed in the state complaint (November 2002 and February 2004) and that he had failed to show that he had been singled out for retaliatory persecution or harassment. That adverse judgment, the federal district court later held, precluded the § 1983 action in its entirety, including the allegations against the additional defendants concerning incidents that had not previously been the subject of litigation. The district court dismissed the case, and this appeal ensued.

## II.

The defendants ask us to affirm on two separate bases. They primarily argue that we may rely on the district court's preclusion rationale, which is subject to de novo review. Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 89 (1st Cir. 2007). Offering an alternative means to the same end, they also assert that Cruz-Berríos failed to exhaust his administrative remedies before filing his federal claim, in violation of 42 U.S.C. § 1997e(a). Because the second of these arguments may provide an uncomplicated means of resolving this case on a more developed record, we begin there.

A.

The Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  This exhaustion requirement applies to allegations of physical violence by prison guards. Porter v. Nussle, 534 U.S. 516, 532 (2002).

The defendants contend that dismissal is warranted here because the complaint fails to indicate whether or not Cruz-Berríos has exhausted his administrative remedies.  But it was not Cruz-Berríos's burden to plead exhaustion, which must be raised and proved by the defense.  Jones v. Bock, 549 U.S. 199, 216 (2007). Although the defendants have now raised the issue, neither they nor Cruz-Berríos have pointed to any evidence in the record that would indicate one way or the other whether the exhaustion requirement has in fact been satisfied.  And because the district court dismissed the case on preclusion grounds, it never addressed the matter.  Accordingly, we remand the case to the district court for additional fact-finding as to whether the PLRA exhaustion requirement bars Cruz-Berríos's suit or not.  If so, it would obviate any further need to consider the preclusive effect of the

Court of First Instance's decision.  But this is the defendants'
burden to prove.

B.

A final judgment on a matter may, in certain
circumstances, prevent that matter's re-adjudication in a
subsequent case.  The doctrine of res judicata[5] "relieve[s] parties
of the cost and vexation of multiple lawsuits, conserve[s] judicial
resources, and, by preventing inconsistent decisions, encourage[s]
reliance on adjudication."  Allen v. McCurry, 449 U.S. 90, 94
(1980).  Because "[u]nder the full faith and credit statute, 28
U.S.C. § 1738, a judgment rendered in a state court is entitled to
the same preclusive effect in federal court as it would be given
within the state in which it was rendered," In re Sonus Networks,
Inc., 499 F.3d 47, 56 (1st Cir. 2007), we look to Puerto Rico law
in order to determine the res judicata implications of the Court of
First Instance's judgment.

Puerto Rico's law of res judicata is codified at P.R.
Laws Ann. tit. 31, § 3343, which provides that a prior judgment

_____

[5]Depending on the speaker's intention, the term "res judicata"
may refer either to the doctrine of claim preclusion specifically
(coupled with "collateral estoppel" as a synonym for issue
preclusion) or else to the doctrines of claim and issue preclusion
collectively.  We here use the phrase in the second sense.  See
Taylor v. Sturgell, 128 S. Ct. 2161, 2170 n.5 (2008) (explaining
that the broad meaning of res judicata as an umbrella term that
encompasses both claim preclusion and issue preclusion "ha[s]
replaced a more confusing lexicon").

will have preclusive effect when there is "the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such." This provision encompasses both of the two traditional aspects of res judicata: claim preclusion and issue preclusion. Coors Brewing Co. v. Mendez-Torres, 562 F.3d 3, 19 (1st Cir. 2009). Under Puerto Rico's res judicata scheme, claim preclusion "binds parties from litigating or relitigating any claim that was or could have been litigated in a prior adjudication and prevents claim splitting," Gener-Villar v. Adcom Group, Inc., 417 F.3d 201, 205 (1st Cir. 2005) (per curiam) (internal brackets omitted); issue preclusion, on the other hand, "forecloses relitigation in a subsequent action of a fact essential for rendering a judgment in a prior action between the same parties, even when different causes of action are involved." Id. at 205–06.

The three claims presented to us on appeal, corresponding to the final three alleged incidents of abuse, fall into two categories.[6] The February 2004 incident has already been the subject of actual litigation in the Court of First Instance. The August 2004 and March 2005 incidents, on the other hand, have not. The district court concluded that this distinction was irrelevant and that all three claims were subject to issue preclusion. Citing the rule that "a plaintiff cannot avoid the bar of [issue

---

[6]Cruz-Berríos claimed four separate incidents of abuse in his second amended complaint, but because the first of these claims was time-barred, our review extends only to the final three.

preclusion] simply by suing a defendant for continuing the same conduct that was found to be lawful in a previous suit brought by the same plaintiff,"[7] Ramallo Bros. Printing, Inc., 490 F.3d at 91, the court held that no material differences existed between any of the alleged incidents of abuse because the plaintiff presented them as part of a "continuing pattern of violation." Cruz-Berríos, 577 F. Supp. 2d at 564 (emphasis in original). As a result, to the extent that the first set of incidents was found to be lawful in the state case, the second set of incidents would also be lawful as a matter of issue preclusion.

We disagree. The distinction between the claims already adjudicated and those not already adjudicated remains critical here. It is therefore necessary to unravel the individual allegations that the district court viewed as part of a single whole.

1.

To begin with, issue preclusion does not apply to the events that the Court of First Instance never expressly or implicitly considered. The alleged August 2004 and March 2005

_____

[7]Cruz-Berríos correctly observes that this principle is taken from a case concerning federal, rather than Puerto Rico, issue preclusion principles. He does not, however, offer any authority one way or the other as to whether Puerto Rico law encompasses an analogous rule. Because we ultimately conclude that the principle is inapposite to this situation anyway, we will assume without deciding that Puerto Rico law mirrors federal law on this point.

beatings, which appeared for the first time in the federal case, are independent events that are far too fact-specific to lend themselves to generalization as "the same conduct" examined in the state case. That the Court of First Instance held Cruz-Berríos's treatment in prison to be lawful on certain occasions does not necessarily dictate as a matter of issue preclusion that his treatment on subsequent occasions must be held lawful as well. Cf. Dawkins v. Nabisco, Inc., 549 F.2d 396, 397 (5th Cir. 1977) (holding under federal res judicata principles that a dismissal of a Title VII retaliation claim could not preclude claims of subsequent retaliation because otherwise "a company that had once won a suit alleging retaliation for participation in Title VII proceedings would be free to retaliate at will against the earlier plaintiff without fear of being held accountable for its actions."). At this juncture, it is impossible to tell whether the conduct newly alleged in the federal case would turn out to be meaningfully different from the conduct tried on the merits in the state case. Further proceedings may establish that the new allegations are simply more of the same, or they may turn out to be something more egregious.

The defendants argue that insofar as Cruz-Berríos has chosen to present the individual incidents as part of a continuing pattern of abuse, the issue posed by the new claims is actually identical to the one already adjudicated in state court. The

response is that this is not necessarily so. It discounts the fact that there are two more alleged incidents of beatings later. It also discounts the possibility that Cruz-Berrios's rights were violated in at least one instance, creating potential liability for at least some defendants regardless of whether there is a pattern.

At the same time, even if issue preclusion does not apply to these newly alleged incidents, claim preclusion nevertheless might apply. The district court indicated that Cruz-Berríos should have amended his state complaint to reflect these two new incidents, which arose before his state case went to trial.[8] Cruz-Berríos, 577 F. Supp. 2d at 564. The court did not indicate the source of this rule, and while the defendants understandably defend it on appeal, they similarly provide no authority for it. It is true that some jurisdictions employ a rule that a party is obligated, on pain of preclusion, to amend a complaint to reflect events that postdate the commencement of the action. See, e.g., Monterey Plaza Hotel Ltd. P'ship. v. Local 483 of Hotel Employees, 215 F.3d 923, 928 (9th Cir. 2000) (applying California law that "the doctrine of res judicata bars the relitigation of all events which occurred prior to entry of judgment, and not just those acts that happened before the

_____

[8]Although the district court portrayed this as a matter of issue preclusion, we think it is actually one of claim preclusion, which, unlike issue preclusion, can bar a matter that has not yet been actually litigated.

complaint was filed."). But other jurisdictions do not impose such a burden on plaintiffs, see, e.g., Doe v. Allied-Signal, Inc., 985 F.2d 908, 915 (7th Cir. 1993), and there is no reason to assume conclusorily what Puerto Rico's rule may be. Because this issue has not yet been briefed, we think it best to remand the case to the district court, where the parties may have a chance to argue whether Puerto Rico law would apply claim preclusion to post-complaint events that could have been but were not raised through an amended complaint.

2.

We turn then to the preclusion of the federal claim concerning the February 2004 incident, which the Court of First Instance did adjudicate on the merits. Cruz-Berríos contends that this claim was not precluded, notwithstanding the state court's adjudication of the same facts, because the res judicata statute's requirements of "perfect identity between the things, causes, and persons of the litigants" have not been met. For the most part at least, he is mistaken. As we shall explain, an underdeveloped record prevents us from making a less qualified statement.

i.

Cruz-Berríos sued all of the federal action defendants in both their official and personal capacities. We can immediately

-11-

resolve the official-capacity claim. Cruz-Berríos first posits that the parties are not identical inasmuch as his federal action contains new defendants. Yet the Puerto Rico res judicata statute's "perfect identity of parties" clause does not demand a literal identity; it operates, rather, as a privity requirement. R.G. Fin. Corp. v. Vergara-Nunez, 446 F.3d 178, 185-86 (1st Cir. 2006); Perez-Guzman v. Gracia, 346 F.3d 229, 234 (1st Cir. 2003). This means that the clause is satisfied whenever "one party acts for or stands in the place of another in relation to a particular subject matter," R.G. Fin. Corp., 446 F.3d at 187, or, in the Puerto Rico Supreme Court's words, whenever those parties amount to the same "party really interested." Puerto Rican Independence Party v. Commonwealth Elections Comm'n, 20 P.R. Offic. Trans. 607, 632 (1988).

That condition is satisfied here. Traditionally, "[t]here is privity between officers of the same government so that a judgment in a suit between a party and a representative of the [government] is res judicata in relitigation of the same issue between that party and another officer of the government." Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 402-03 (1940); see also Barclay v. Lowe, 131 F. App'x 778, 779 (2d Cir. 2005) (applying the privity principle to state corrections officers sued in their official capacities for allegedly assaulting an inmate). As stated, Puerto Rico law treats such privity between

-12-

parties as identity. With respect to the plaintiff's official-capacity claim based on the February 2004 allegations, the representative roles of the defendants in this action are the same as those in the state action. The parties in the official-capacity suit are therefore perfectly identical to the parties in the prior litigation. See Del Carmen Tirado v. Dep't of Educ., 296 F. Supp. 2d 127, 134 (D.P.R. 2003) (noting that official-capacity claims against officers in the Puerto Rico Department of Education were barred by res judicata, notwithstanding those officers' nonparty status in a prior state suit).

Cruz-Berríos next avers that the "things" and "causes" are not identical because his federal claim arises under § 1983, while his state claim arose under a state tort statute. As we have discussed elsewhere, this sort of argument "mistakes the legal cause of action for the factual 'cause' contemplated by Puerto Rico's preclusion statute: preclusion requires an identity of the latter, not the former." Baez-Cruz v. Municipality of Comerio, 140 F.3d 24, 30 (1st Cir. 1998). Thus, regardless of the legal vehicle through which an action is brought, claims share a perfect identity of cause "when they flow from the same principal ground or origin." R.G. Fin. Corp., 446 F.3d at 183. So long as the claims "either were or could have been asserted in a prior action" based on the same transaction, they are precludable. Id. Similarly, "[t]wo actions share an identity of 'things' if a decision in the second

action might function to contradict a right arisen or arising from, or a right affirmed by a prior decision." Id. (internal brackets and quotation marks omitted).  Accordingly, "a mere difference in the legal theories on which two causes of action are grounded does not destroy the identity of thing or cause that otherwise exists between two suits arising out of a common nucleus of operative fact."  Id. at 184.  This all amounts to what is known in common law jurisdictions as the "transactional approach" to claim preclusion.  Id. at 183.

Here, Cruz-Berríos's federal claim entails the same factual cause as was dealt with in the analogous claim in his state suit, namely, the officers' conduct on February 28, 2004; the § 1983 theory of liability could have originally been raised in his state suit, Acevedo v. Srio. Servicios Sociales, 12 P.R. Offic. Trans. 317 (1982); and a finding of liability in his federal suit would necessarily contradict the Court of First Instance's determination that the corrections officers acted lawfully.  The thing and cause, like the identity of the parties, are identical. Thus, Cruz-Berríos's state suit precludes his current official-capacity claim against the defendants concerning the events in February 2004.

ii.

Cruz-Berríos's personal-capacity claim, on the other hand, is not so neatly resolved. Although the capacity in which the defendants are sued does not affect the identities of thing and cause, there is some possibility that it would affect the identity of the parties. At the outset, we note our skepticism that Puerto Rico law would allow a plaintiff who lost against one defendant to then bring a new claim against another defendant (to say nothing of a claim against the same defendant merely in a different capacity) based on the same transaction where the outcome in the first case effectively negates the claim in the second. Were such relitigation permissible, a plaintiff could in principle have as many bites of the apple as there were non-privy defendants to be sued. This is precisely the sort of outcome that defensive non-mutual issue preclusion typically guards against.

At the same time, we are not in a position to convert that instinctive skepticism into an authoritative statement that Puerto Rico law would dispense with its mutuality requirement under these circumstances. So far as we can glean, the case law does not definitively foreclose the possibility that Puerto Rico would require mutuality even under these circumstances. We therefore proceed with caution, and will await further development of the case, before making any definitive statement as to which result Puerto Rico law intends. On remand, the parties and the district

court should devote some attention to this issue if it proves necessary to resolve the case.

If the personal-capacity claims are indeed subject to non-mutual issue preclusion, then the February 2004 claim would be barred as to all defendants, and nothing more need be said. If, on the other hand, it turns out that a mutuality requirement does prevent preclusion against such newly named personal-capacity defendants, we would need to take the further step of looking to see who was named in the state suit. It is clear that at least some of the newly named defendants were included in the federal complaint solely because of the August 2004 and March 2005 claims.[9] Subject to our earlier discussion of post-complaint events, the Court of First Instance's decision would not appear to preclude those claims against those defendants.[10]

Thus, a strict mutuality requirement would necessitate a complete tally of who was named in the first suit. Unfortunately, the record before us contains none. Its only reference to the parties before the Court of First Instance occurs in a

_____

[9]So far as we can tell from our reading of the second amended complaint, these defendants are: William Class-Quirós, Santos Jiménez-Colón, Eddie M. Cruz-Santiago, Erick García-Santos, Enil Montalvo-Morales, Osvaldo Rivera-Domínguez, and Wilmer Sepúlveda.

[10]This conclusion, which follows from Puerto Rico's "identity of parties" requirement, seems inconsistent with the extension of res judicata to post-complaint events, even those involving nonparties, as the district court appears to have assumed. But we leave it to the litigants and the district court on remand to consider in the first instance what the actual state of the law is.

nonexhaustive list appearing in a Puerto Rico appeals court's recitation of facts in the underlying case. Although the list mentions some defendants by name, it also adds the cryptic phrase "and others."[11] Because we cannot divine the identity of those others, we can only speculate as to who may be shielded by res judicata and who may not. At the very least, any individual clearly named as a personal-capacity defendant in the state case would be able to preclude Cruz-Berríos's claim concerning the events of February 2004.[12] Any other individual who wishes to reap the benefit of claim preclusion would have the opportunity on remand to present the district court with evidence that he, too, was a personal-capacity defendant in the state case.[13] On this

_____

[11]It is possible that this phrase was meant as a John Doe-style placeholder for as-yet unidentified defendants. If so, then it would raise a question as to whether res judicata principles would allow Cruz-Berríos for the first time in his federal complaint to fill in who these "others" were. We have previously expressed doubt that a party's presence as a John Doe defendant in one suit would preclude subsequent claims against it as a named party in a future suit, see Iantosca v. Step Plan Servs., Inc., 604 F.3d 24, 30 (1st Cir. 2010), but the question would ultimately be governed by Puerto Rico law, which might have a different take. In any case, because the reference to "others" could easily mean named defendants, rather than John Does, the question may yet turn out to be academic.

[12]These defendants are Carlos González-Rosario, Miguel Pereira, Uziel Ruiz-Ledée, and Reinaldo Surén.

[13]To the extent that a personal-capacity defendant in the federal suit was named only as an official-capacity defendant in the state action, we again defer a definitive ruling. Some courts have found privity elastic enough to be asserted defensively by a government official who, after prevailing in an official capacity, is later sued personally. See 18A Charles Alan Wright, Arthur R.

issue, like exhaustion under the PLRA, the defense bears the burden of proof.  Perez-Guzman v. Garcia, 346 F.3d 229, 234 (1st Cir. 2003).  But we stress again that all of this becomes necessary only if Puerto Rico's "identity of parties" rule would not allow defensive non-mutual issue preclusion on these facts.

### III.

In summary, our holding varies by claim, by defendant, and by capacity.  First, we remand for the district court to consider whether Cruz-Berríos failed to exhaust all administrative remedies available to him before initiating his federal action. Resolution of that issue has the potential to dispose of the entire action without need for further consideration of the res judicata questions.

As to the February 28, 2004, incident, we affirm the district court's dismissal of the official-capacity claim against all defendants; we also affirm the district court's dismissal of the personal-capacity claim against those defendants already named as personal-capacity defendants in the state case; but as to the personal-capacity claim against those defendants whose party status in the state case remains unclear, we reverse the dismissal and

Miller & Edward H. Cooper, Federal Practice and Procedure § 4458, at 570-71 & n.21 (2d ed. 20002).  But this question must be decided under Puerto Rico law and is thus another matter for attention in the district court in the first instance, if necessary.

-18-

<u>remand</u> for such further consideration as this opinion requires. Similarly, as to the claims concerning the events of August 18, 2004, and March 2, 2005, we <u>reverse</u> the dismissal and <u>remand</u> so that the district court may, again depending on the resolution of the exhaustion issue, consider whether Puerto Rico law would preclude claims arising out of post-complaint events that could have been but were not incorporated into the state case through an amended complaint.

Each party shall bear its own costs of appeal.

**<u>So ordered.</u>**